# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-01095-SCT

## CONSOLIDATED WITH

## 07-CA-58994-SCT

*SIDNEY WONG, M.D.*

*v.*

*JOHN STRIPLING, M.D.; THOMAS HEWES, M.D.;*
*HANS ADAMS, M.D.; THE ESTATE OF L. V.*
*JOHNSTON; DON HOPKINS, M.D.; WILLIAM*
*ATCHISON, M.D.; WILLIAM HOPPER, M.D.;*
*GARDEN PARK COMMUNITY HOSPITAL, INC.;*
*THOMAS BLANKS, M.D.; VICTOR T. BAZZONE,*
*M.D.; HAZEL PORTWOOD, MICHAEL MATTHEWS,*
*D.L. CLIPPINGER, M.D. AND AMERICAN MEDICAL*
*INTERNATIONAL, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/07/94 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PETE HALAT |
| | MICHAEL R. ALLWEISS |
| ATTORNEY FOR APPELLEES: | ROBERT H. PEDERSEN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 9/11/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/2/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. In this case we consider the propriety of a summary judgment dismissing the numerous civil claims a physician brought against a hospital that had decided to revoke his surgical privileges. The physician's claims included breach of contract, tortious interference with business relations, violations

of due process rights, violations of the right to counsel, and intentional infliction of emotional distress. Because we find that the adverse summary judgment was proper on this record, we affirm.

## I.

¶2. Dr. Sidney Wong served as a member of the medical staff of Garden Park Hospital, a private hospital in Harrison County, Mississippi from April 1979 until December 1984, when his staff privileges were suspended by the executive committee of the Hospital. His privileges were permanently revoked and terminated in April, 1985, because of numerous complaints including complaints about his manner and his competence; the improper removal removal of food from the cafeteria; the improper admittance of a patient; his unprofessionally discourteous conduct toward a patient; his failure to adequately examine a patient; his failure to cooperate with hospital personnel regarding consultation requests and patient complaints; and his having urged a patient sue the hospital. This appeal arises out of the third lawsuit that Dr. Wong has pressed since the revocation of his privileges.

¶3. Dr. Wong first challenged the revocation of his privileges by taking an appeal to the Appellate Review Committee at the hospital, which affirmed the revocation decision. Immediately thereafter, Dr. Wong filed a Complaint for Judicial Appeal in the Chancery Court of Harrison County, in which he challenged the revocation decision and the administrative procedures that produced that decision. He named only the Hospital as a defendant, and alleged that the charges against him did not constitute conduct for which a physician could be lawfully disciplined and that he was denied due process. The Chancery Court upheld the decision of the Hospital Appellate Review Committee and found that Dr. Wong had been afforded due process. Dr. Wong appealed that decision to this Court, which affirmed the Chancery Court's decision. *Wong v. Garden Park Community Hospital*, 565 So. 2d 550 (Miss. 1990). This Court found that Dr. Wong had been afforded the due process to which he was entitled, since the Hospital had complied with the procedural requirements of its bylaws in suspending and revoking Dr. Wong's privileges.

¶4. In 1985 while his appeal in this Court was pending, Dr. Wong filed a second action in federal district court, naming fourteen defendants, comprised of several doctors who were directly involved in the decision to revoke his privileges, the Hospital, and the hospital's majority stockholder, American Medical International, Inc., which also managed the Hospital (hereinafter "AMI"). He alleged that these defendants had violated his federal due process rights under 42 U.S.C. §§ 1983, 1985. He additionally sought a declaration that Mississippi's statutory scheme governing private hospitals was unconstitutional, as well as damages under state law for breach of contract, tortious interference with business relations, defamation, and intentional infliction of emotional distress.

¶5. On July 7, 1988, the federal district court granted summary judgment in favor of the defendants on the federal claims, and dismissed the state law claims without prejudice. In so doing, the court found that Miss. Code Ann. § 73-25-93, the provision which governs hospital boards' decisions regarding the privileges of their physicians, did not violate any constitutional proscriptions. The court further found that the Hospital was not a state actor, and thus its suspension of Dr. Wong could not be considered state action within the meaning of 42 U.S.C. §§ 1983, 1985. After concluding that Dr. Wong had no viable federal claim, the court dismissed his state law claims without prejudice. Dr. Wong appealed this decision to the Court of Appeals for the Fifth Circuit, which affirmed the district

court judgment. ***Wong v. Stripling***, 881 F.2d 200 (5th Cir. 1989).

¶6. Dr. Wong next filed this, his third action, in the Circuit Court of Harrison County. He named the same defendants as were named in the previous federal court action. Dr. Wong had also added the State of Mississippi as a defendant. Dr. Wong's amended complaint made the following claims: (1) tortious interference with business relations; (2) breach of contract based on the Hospital's bylaws; (3) defamation, when three of the defendants wrote "poor" or "fair" performance evaluations of Dr. Wong's work, which were then published to another entity with whom Dr. Wong was seeking employment; (4) violation of federal antitrust law; (5) intentional infliction of severe emotional distress; (6) violation of his due process rights under the Fourteenth Amendment; (7) violation of his due process rights under the Mississippi Constitution; (8) violation of his right to counsel during his suspension and revocation hearings; and (9) that Miss. Code Ann. § 73-25-93 was unconstitutional.

¶7. The defendants removed the action back into the federal district court. That court dismissed the State of Mississippi as a defendant since, first, it is immune from suit under the Eleventh Amendment and the doctrine of sovereign immunity, and second, because the previous federal litigation had determined that there had been no state action involved in the decision to suspend and terminate Dr. Wong's privileges.

¶8. The remaining defendants next moved for summary judgment on three of the nine claims. The court granted the motion, finding that Dr. Wong's federal due process claim (claim #6 above) and his claim that Miss. Code Ann. § 73-25-93 was unconstitutional (claim #9) were barred by the doctrine of res judicata, having been decided against him in the previous federal action. The court further granted the defendants' summary judgment motion on Dr. Wong's defamation claim, finding that the statements in question were opinions and thus immune from a defamation suit. The court denied Dr. Wong's motion to reconsider that ruling, and Dr. Wong apparently did not appeal it any further.

¶9. The court next considered the defendants' second motion for summary judgment on the remaining issues, the antitrust claim and the state law claims. The court granted summary judgment on the federal antitrust claim, since Dr. Wong informed the court in his brief on the motion that he would not contest the dismissal of his antitrust claim. The court then declined to adjudicate the motion with regard to the remaining state law claims, and instead remanded them back the Harrison County Circuit Court.

¶10. Back again in circuit court, the defendants next moved for summary judgment on the remaining six claims in two separate motions. The circuit court granted the defendants summary judgment on all of the claims, analyzing the issues as follows:

> (1) Dr. Wong's claim that his state right to due process (claim #7 above) was meritless because the federal district court had previously found that his termination involved no state action which would implicate the state constitutional right to due process.

> (2) Dr. Wong's claim that his termination process was in violation of his right to counsel (claim #8) was meritless because his termination proceedings were neither criminal in nature nor before a "tribunal in the state," the only circumstances in which the Mississippi Constitution guarantees him any right to counsel.

(3) Dr. Wong's claim that the individual defendants and defendant AMI breached a contract with him (part of claim #2) was meritless because the undisputed material facts revealed the Hospital bylaws, upon which Dr. Wong was relying upon as the contract at issue, were signed by the president of the medical staff on behalf of the Executive Committee of the medical staff as one party and by the Chairman of the Hospital's board of directors as the other party. Since there was no privity of contract between Dr. Wong and these defendants, Dr. Wong could not prevail on this claim.

(4) Dr. Wong's claim that Hospital defendant breached the contract that had been formed by the bylaws (claim #2) was barred by the doctrine of collateral estoppel because the Harrison County Chancery Court had already found that the Hospital had abided by its the bylaws in the process of terminating Dr. Wong's privileges. That decision was affirmed by this Court. ***Wong v. Garden Park***, 565 So. 2d 550. Since Dr. Wong presented no additional evidence in the circuit court that had not been presented to the chancery court in the initial action, he was not entitled to relitigate this claim.

(5) Dr. Wong's claim that the defendants' decision to terminate his privileges caused tortious interference with the business relations that he had with the hospital and with his patients (claim #1) was meritless because (a) the Hospital and its agents, i.e., the other individual defendants, could lawfully terminate their relationship with Dr. Wong and (b) the defendants' decision to terminate Dr. Wong's privileges did not in any way affect his license to practice medicine, and thus did not interfere with his relationship with his patients. There was no evidence that the defendants attempted to persuade a patient not to consult with Dr. Wong following the termination of his privileges.

(6) Dr. Wong's final remaining claim, that the defendants intentionally caused him several emotional distress (claim #5), was meritless because his allegations regarding the defendants' objectionable behavior did not evoke outrage or revulsion. The court further reasoned that inasmuch as the chancery court and this Court found that the defendants' behavior comported with due process, it could not at the same time evoke outrage and revulsion so as to support a conclusion that they intentionally inflicted severe emotional distress.

¶11. There being no remaining claims, the circuit court dismissed the action.

¶12. Dr. Wong appealed this disposition, arguing that summary judgment was improper with regard to the following claims: breach of contract, tortious interference with a business relations, due process, right to counsel and the intentional infliction of emotional distress.

## II.

¶13. As Dr. Wong notes in his brief, this Court reviews a summary judgment decision *de novo*, and such review consists of determining whether there were no genuine issues of material fact such that the moving party was entitled to judgment as a matter of law. If any triable issues of fact exist, the lower court's decision to grant summary judgment must be reversed. ***Brown v. Credit Center, Inc.***, 444 So. 2d 358, 362 (Miss. 1983).

¶14. That said, Dr. Wong appeals the adverse summary judgment on all of his claims. We will

address each portion of the judgment in turn.

*i. breach of contract*

¶15. Dr. Wong first appeals the circuit court's disposition of his breach of contract claims, which he alleged against the individual defendants, the defendant AMI which managed the Hospital, and against the Hospital itself. He argues that the bylaws, the basis for his breach of contract claim, did in fact create contractual duties between the individual doctor defendants and himself. (The Circuit Court found that the non-Hospital defendants were entitled to judgment as a matter of law on this claim because they were not parties to the contract created by the bylaws).

¶16. However, Dr. Wong points to Article XVI of the bylaws, which seems to contemplate liability between staff members in that it grants staff members a limited qualified immunity unless they act in bad faith or malice. Dr. Wong also notes that each physician at the Hospital, including the defendant physicians, was a party to the bylaws, and that the physicians were charged with executing the various administrative procedures that are set up by the bylaws.[1]

¶17. Dr. Wong further that the summary judgment was improper on this claim with regard to defendant AMI, the Hospital's majority stockholder and manager. He suggests that since AMI was charged with the ultimate and full responsibility of the Hospital's operations and owned 94% of the Hospital's stock, the fact that it is not, itself, a party to the bylaws is "purely technical." He cites *Pariser v. Christian Health Care Systems, Inc.*, 816 F.2d 1248 (8th Cir. 1987) (finding management company liable for breach where, in support of this construction). He further argues that AMI assumed the same obligations as the Hospital to its staff members when it undertook its far-reaching authority over Hospital operations affairs as its manager.

¶18. The appellees on the other hand, argue that the summary judgment was proper against the individual defendants, as well as AMI because the undisputed facts showed that the contract was between the Hospital as one party and the medical staff as the other party. Neither AMI nor the individual defendants signed the bylaws in their individual capacities. The appellees further argue that Article XVI of the bylaws, the provision relied upon by Dr. Wong, is more readily understood to be a grant of immunity from tort actions, not immunity from breach of contract actions between staff members.

¶19. Moreover, the appellees argue that the summary judgment was proper with respect to defendant AMI because not only was it not a party to the contract, but Dr. Wong has failed to point to any evidence to support his theory that AMI should nevertheless be liable for the bylaws' provisions. The appellees note that the case which Dr. Wong cites, *Pariser*, is inapposite in that the federal circuit court specifically noted that it was willing to find the hospital management company liable in that case even though it was not technically bound by the bylaws in question because the company had conducted itself throughout that litigation as though it did in fact have a direct contractual relationship with the aggrieved doctor. *Id.* at 1253, n.2. AMI has notably *not* done so in this case, and the appellees therefore conclude that *Pariser* does not support any theory of their contractual liability.

¶20. Finally, Dr. Wong argues that the summary judgment improperly dismissed his breach of contract claim against the Hospital because the circuit court improperly applied the doctrine of

collateral estoppel. The circuit court found that collateral estoppel barred this claim because the chancery court, in Dr. Wong's initial action alleging due process violations, had considered and rejected the facts set forth by Dr. Wong in his breach of contract claim when it found that the Hospital had complied with its bylaws. *Citing* **Wong v. Garden Park**, 565 So. 2d 550. Dr. Wong presently argues that this claim was not properly barred since this action is one for damages at law, while the previous action was for a remedy in equity. Dr. Wong also argues that these claims were not barred because both this Court, in its disposition of his initial action in chancery court, and the federal district court in its remand of this action back into state court implied that his state law claims remained viable.

¶21. Moreover, Dr. Wong argues that collateral estoppel is inappropriate because his present standard of proof for relief, the preponderance of the evidence, is considerably lower than what was required of him in the previous action, where he would have had to show that there was no substantial evidence to support the Hospital's decision. Dr. Wong also summarily states that the chancery court, in making its previous decision, did not consider the personal motives and biases of the committee members, nor whether the Hospital's decision to terminate his privileges was made upon grounds legally permissible under Mississippi law. He finally notes that the chancery court did not determine whether the defendants beached their duty of good faith and fair dealing.

¶22. The appellees counter that the circuit court was correct in using collateral estoppel to bar this claim, because the factual basis had been considered by the chancery court in the previous state action. They note that a brief which Dr. Wong had submitted to the Hospital's Appellate Review Committee and which contained all of the factual allegations that form the basis of his breach of contract claim was submitted to the chancery court in Dr. Wong's behalf. The appellees contend that the chancery court must have rejected these allegations in order to conclude that the Hospital had complied with the bylaws requirements of due process.

¶23. This Court finds that the adverse summary judgment was proper for the breach of contract claims against all of the defendants. The breach of which Dr. Wong complains consists of the same violations that formed the basis of his initial claim of due process violations that were litigated in the initial action in chancery court: that the Hospital violated the bylaws in terminating him in the procedural manner in which it did; that the Committee which made the decision was biased against him; and that the Committee would not let him adequately prove his bias allegations.

¶24. As the circuit court ruled and the appellees reiterated with respect to the claim against the Hospital, this Court has already reviewed the matter and determined that the procedure by which Dr. Wong's privileges were terminated did, in fact, comport with the due process requirements as prescribed by the bylaws in **Wong v. Garden Park**. Since this Court has already determined the conduct of which Dr. Wong presently complains caused him no violation of the bylaws' due process provisions, the doctrine of collateral estoppel prevents him from now prosecuting an action for breach of contract on the theory that those actions nevertheless represent a breach of the bylaws. In other words, this Court has already found that there was no breach in **Wong v. Garden Park,** 565 So. 2d 550.

¶25. Collateral estoppel bars a party from relitigating specific issues or facts that have already been litigated in a former action when those issues or facts were actually determined and essential to the

judgment in the former action, even where the later action proceeds on a different basis or cause of action. *Riley v. Moreland*, 537 So. 2d 1348, 1354 (Miss. 1989). In *Wong v. Garden Park*, this Court necessarily must have found that Dr. Wong's allegations, which were the same as his present allegations and which were presented to this Court, did not represent a breach of the bylaws. Indeed, our review in that matter was limited to an assessment of whether the Hospital had followed its own bylaws. *Wong v. Garden Park*, 565 So. 2d at 553, *citing* **Miss. Code Ann. § 73-25-93**. In light of that finding and its preclusive effect, Dr. Wong was not free to relitigate a claim of breach of contract based on the same facts. Since there was no breach to be found in Dr. Wong's allegations, we hold that the circuit court properly entered summary judgment against his claims against all of the defendants.[(2)]

*ii. tortious interference with business relations*

¶26. Dr. Wong previously complained that the defendants tortiously interfered with his relationship with the Hospital, and that they interfered with his relationship with his patients. The circuit court entered summary judgment against him because it found that (a) neither the Hospital nor its agents, the individual doctors, could be held liable for interfering with Dr. Wong's relationship with the Hospital, since the Hospital was privileged to refuse to do business with Dr. Wong and (b) neither the Hospital nor the individual defendants could be held liable for tortiously interfering with his relationships since the termination did not affect his license to practice medicine nor his ability to admit patients at the other hospital where he maintained privileges, and since Dr. Wong failed to make any showing that the defendants attempted to persuade a patient not to consult Dr. Wong for medical help. Thus the circuit court concluded that Dr. Wong could not show that he was entitled to any relief.

¶27. Dr. Wong now argues that the circuit court's grant of summary judgment on his claim of tortious interference with business relations was improper because the court failed to consider the question of fact that was raised by the substantial evidence that the individual defendants disliked him and thus were motivated by malice to tortiously interfere with his relationship with the Hospital and with his patients. He also notes that the court did not properly consider the evidence that the Hospital's termination decision made it difficult for him to obtain privileges at other hospitals, and that the Hospital's termination decision *could* serve as a basis for termination at other hospitals.

¶28. Upon review, we hold that summary judgment was proper with regard to this claim. In *Cenac v. Murry,* 609 So. 2d 1257, 1271 (Miss. 1992), we explained the action of tortious interference with business relations:

> . . . It is true a person has the right to refuse to have business relations with any person whomsoever, whether his refusal is the result of caprice or malice, without laying himself liable to action therefor; but he cannot from such motives, influence others to the same course, for the purpose of injuring the business of such other. The act and the accompanying motive together constitute the unlawful act.

*Id.* at 1269, *citing* **Wesley v. Native Lumber Co.,** 97 Miss. 814, 820, 53 S. 346, 347 (1910).

¶29. We further enunciated the elements of tortious interference with business relations in *MBF Corporation v. Century Business Communications, Inc.*, 663 So. 2d 595, 598 (Miss. 1995). These

elements are whether (1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual damage and loss resulted.

¶30. Not having the benefit of *MBF*, the circuit court in this case conducted its analysis along the lines of *Cenac*, and concluded that Dr. Wong had failed to make any showing that the defendants had maliciously influenced others to avoid his business. We agree with the circuit court's determination.

¶31. First, under *Cenac*, the Hospital obviously had the right to "interfere" with its own relationship with Dr. Wong.[(3)] Secondly, Dr. Wong has failed to explain in this appeal any evidence of the defendants' malicious interference with his relationship with others. The evidence he offers, that he has had difficulty obtaining employment and privileges following his dismissal from the Hospital and that his dismissal could *potentially* serve as a basis for a revocation elsewhere, is not probative at all of the defendants' *willful intent* to interfere in those other business relationships. That evidence merely reflects the incidental consequences of his termination from the Hospital. Dr. Wong simply fails to offer any proof of the first element of this claim, that the defendants influenced others to the same course that they took for the purpose of damaging his business. *See Fuselier, Ott & McKee v. Moeller*, 507 So. 2d 63, 69 (Miss. 1987) (holding error for chancellor to find that the appellants had tortiously interfered with the appellee's business relationships where record failed to disclose a single client who was influenced by the appellants to terminate the appellee's services due to the appellant's intervention). We therefore hold that the adverse summary judgment was proper with regard to this claim.

*iii. violation of state constitutional right to due process*

¶32. Dr. Wong next complains that the adverse summary judgment was improper with regard to his claim that his state due process rights were violated by this termination because the trial court applied the wrong standard in concluding that the Hospital's actions were not closely enough linked with the state to invoke constitutional constraints. Dr. Wong argues that since the Mississippi Code had delegated its traditional judicial authority to govern the discharge of physicians to the Hospital in allowing it to conduct its own suspension and revocation hearings, there is a sufficiently close nexus between the government and the Hospital's actions so that actions of the Hospital may be treated as those of the government, therefore constituting state action. He cites some Code sections that govern hospitals and suggests that these sections provide the parameters under which a physician's hospital privileges can be revoked.

¶33. The circuit court granted summary judgment on this claim on the grounds that, one, the statutory scheme regulating private hospitals was not a grant of state power such as would transform the Hospital into a state actor and two that the claim was collaterally estopped, since the federal district court, in a decision affirmed in the Fifth Circuit, found that the Hospital's conduct was not state action as would support Dr. Wong's claims under 42 U.S.C. §§ 1883, 1985. *Wong v. Stripling*, 881 F.2d at 203.

¶34. The circuit court was correct in its determination that Dr. Wong was collaterally estopped from relitigating the issue of whether the Hospital's conduct was state action. This issue was litigated, actually determined, and was essential to the judgment in Dr. Wong's second suit in this matter that

was pursued in federal court, in which he alleged violations of his First and Fourteenth Amendment rights under 42 U.S.C. §§ 1983, 1985. In *Wong v. Stripling*, the Court of Appeals for the Fifth Circuit considered Dr. Wong's present argument that the Mississippi Code's regulatory scheme governing hospitals operates to delegate to them the exclusive province of traditional state functions, as well as his further argument that there is a nexus between the Hospital and the state that is so close that the Hospital's actions can be fairly attributed to the State. *Id.* at 202.

¶35. In response, to Dr. Wong's arguments, the court found that the statutory scheme simply authorized action which was already legal at common law, although it further requires that hospitals comply with their own bylaws. That court further found that nothing in the Mississippi statutory scheme "mandated or even encouraged" the Hospital's conduct toward Dr. Wong, thus concluding that, in light of its rights at common law, the Hospital's termination of Dr. Wong was not undertaken under some statutory grant of traditional state authority. Furthermore, the court found that the statutory scheme would not suffice to establish the nexus necessary to transform the Hospital's conduct into state action because the scheme consisted of purely procedural regulations. *Id.*

¶36. In light of these findings, Dr. Wong is collaterally estopped from relitigating the question of whether the Hospital's conduct was state action, and we therefore hold that the adverse summary judgment on his constitutional due process claim was proper.[(4)]

*iv. violations of right to counsel*

¶37. Dr. Wong next argues that the circuit court should not have granted summary judgment on his claim that he was denied his right to counsel during the revocation proceeding, in violation of his rights under Article 3, § 25 of the Mississippi Constitution. Dr. Wong unsuccessfully requested the presence of counsel at the hearing before the Judicial Review Committee of the Hospital, and now argues that he was entitled to have counsel present since his access to subsequent judicial review was so severely limited in scope. He further argues that he was constitutionally entitled to counsel since the Hospital committees were acting in a quasi-judicial role, in that they were compiling a record and making factual determinations which would be entitled to certain deference in subsequent judicial review.

¶38. The circuit court was correct in concluding that Dr. Wong was not entitled to counsel. Obviously, this revocation proceeding was not a criminal prosecution. Art. 3, § 25, of the Mississippi Constitution is the only other constitutional source for a right to counsel, and it reads as follows: "No person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both." This Court has construed this provision in just a few cases since its adoption in 1890. In *Saxon v. Hervey*, 223 So. 2d 620, 623 (Miss. 1969), we noted that this provision guaranteed any person "the right to represent himself or herself in any court in any civil cause." In *Paxton v. LaBarre*, 253 So. 2d 248 (Miss. 1971), we relied upon this provision in part to reverse a lower court's entry of default judgment against a party to a lawsuit when the party had been present in court, although without counsel. In *Standard Life Ins. Co. of Indiana v. Veal*, 354 So. 2d 239, 252 (Miss. 1977), Presiding Justice Smith noted in his dissenting opinion that Article 3, § 25 meant that "[E]very person against whom a suit is brought is entitled to defend it without exposing himself to punishment for so doing in the event he does not prevail." (This case did not ultimately turn upon an interpretation of this constitutional provision).

¶39. In *Mississippi State Probation and Parole Bd. v. Howell*, 330 So. 2d 565 (Miss. 1976), we rejected an appellant's argument that Article 3, § 25 guaranteed her the right to be represented by counsel in her parole revocation hearing. We held that the parole revocation hearing was an administrative proceeding, not a "civil cause" within the meaning of the provision, and that it therefore was not attended by any constitutional guarantee of counsel.[(5)]

¶40. Although it is never squarely addressed, one of the consistent themes throughout these cases is the fact that the tribunals in question were not only tribunals *in* the State, as expressly required by the provision, but were also tribunals *of* the State. The problem with Dr. Wong's argument in the instant case is that the tribunal which revoked his privileges was not a tribunal *of* the State. We therefore hold that this provision did not apply to him. We further hold that Article 3, § 25 applies only to prosecutions and defenses in tribunals of the state.

¶41. Thus, Dr. Wong is not entitled to any counsel under this constitutional provision, and the adverse summary judgment on this claim was proper.

*v. intentional infliction of emotional distress*

¶42. Finally, Dr. Wong appeals the adverse summary judgment against his claim that the defendants intentionally inflicted emotional distress upon him, arguing that the circuit court applied the wrong standard. Dr. Wong urges this Court to understand that the defendants' actions wrought a severe (and negative) impact on his career as a surgeon, and that he was outraged and repulsed. The appellees reply and the circuit court found, that Dr. Wong received due process from the defendants, otherwise known as even-handed fairness. They argue that their conduct cannot comport with due process, and, the same time satisfy the standard of intentional infliction of emotional distress. They argue that he is collaterally estopped from claiming that the same conduct which has been found to comport with due process nevertheless now forms the basis of this intentional infliction of emotional distress claim.

¶43. The circuit court granted summary judgment on this claim on the ground that the factual bases of the claim (the fact that the chairman of the Judicial Review Committee of the Hospital was biased against him yet sat on the Committee that revoked his privileges, that one of the defendants called him a thief and a liar, that the Committee did not consider all of Dr. Wong's evidence, and that they refused to give him access to his complete personnel file) did not, as a matter of law, evoke the outrage or revulsion that would be necessary to sustain the claim. The court further held that, as a matter of law, the allegations upon which Dr. Wong relied could not evoke outrage or revulsion when this Court had already found that they comported with his due process rights.

¶44. Contrary to the circuit court's conclusion, the doctrine of collateral estoppel does not bar Dr. Wong from litigating this claim on these facts, because what was previously litigated was whether the defendants' conduct gave rise to a breach of the bylaws and not whether the conduct gave rise to intentional infliction of emotional distress. Therefore, the instant question was not "actually litigated" and is not presently barred.

¶45. Furthermore, we have found no authority for the circuit court's conclusion that "any conduct resulting in [contractually prescribed] due process cannot, at the same time, evoke the requisite outrage or revulsion."

¶46. Nevertheless, the court is correct in its conclusion that the conduct here at issue does not rise to the level of willful, wanton, malicious, or intentional wrong sufficient to evoke outrage or revulsion. The *Restatement (Second) of Torts § 46 Cmt. d* provides as follows:

> Extreme and outrageous conduct: The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim "Outrageous!"

> The liability clearly does not extend to mere insults indignities, threats, annoyances, petty oppression, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

¶47. We have previously adopted at least a portion of that definition in *Morrison v. Means*, 680 So. 2d 803, 805-06 (Miss. 1996): "[The standard of recovery for mental anguish and intentional infliction of emotional distress] requires conduct so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community," *quoting Restatement (Second) of Torts § 46, Cmt. d (1977)*. *See also Peoples Bank and Trust Co. v. Cermack,* 658 So. 2d 1352, 1365 (Miss. 1995) (citing *§ 46*, the definition of "outrageous conduct causing severe emotional distress"); *Lyons v. Zale Jewelry Company*, 246 Miss. 139, 149, 150 So. 2d 154, 157 (Miss. 1963) (*citing § 46 of the first Restatement of Torts*, on definition of "Conduct intended to cause emotional distress only").

¶48. This Court has considered in other cases whether conduct was sufficient to support a claim of intentional infliction of emotional distress. In *Lyons v. Zale Jewelry*, this Court held that demurrer on a claim of mental anguish was improper where a debt collector abused a woman over the telephone, calling her a "dam liar," a "g..d..bitch," and threatening to send her to jail along with her son, the actual debtor. *Lyons v. Zale Jewelry*, 246 Miss. at 143; 150 So. 2d at 155. The incident caused her extreme shock, hysteria, and disabled her from performing her work.

¶49. In *Peoples Bank and Trust Co. v. Cermack*, 658 So. 2d 1352 (Miss. 1995), this Court held that the intentional infliction of emotional distress could not be predicated on the fact that the bank had forced the appellee to lay off his plant manager, where the record indicated that the bank had only told the appellee that he had to cut costs and invited him to submit cost-cutting proposals. Since the appellee had not submitted any proposals that did not include laying off the plant manager, the bank's actions could not be considered wanton and willful, nor the cause of outrage or revulsion. *See also T.G. Blackwell Chevrolet Co. v. Eshee*, 261 So. 2d 481 (Miss. 1972) (forging of person's name on a

loan contract and thereby exposing him to risk of destroyed credit rating sufficient to warrant damages for mental anguish and suffering).

¶50. In *Fuselier, Ott & McKee v. Moeller*, 507 So. 2d 63, 69 (Miss. 1987), this Court addressed whether behavior was willful or wanton. It found that the appellant's firing of the appellee, ordering him to leave immediately and not return without permission, and changing the locks on the firm was not willful, wanton, or malicious where the appellant had a contractual right to discharge the appellee. *See also* *Leaf River Forest Products, Inc. v. Ferguson*, 662 So. 2d 648 (Miss. 1995) (finding no basis for intentional infliction of emotional distress claim where claim arises in fear of future disease that may result from possible exposure to environmental toxin; claimants offered no proof that future illness was actually imminent or probable, and company had tried to address the toxin problem and thus were not behaving willfully, wantonly, or grossly negligently); *Morrison v. Means*, 680 So. 2d 803 (finding conduct did not rise to level of malicious, intentional, willful, wanton, grossly careless, indifferent, or reckless where the appellant had failed to honor a refund that had been expected by the appellee, although the appellant had tried to accommodate the appellee's needs).

¶51. Although it is strongly questionable whether or not the behavior of which Dr. Wong complains is sufficiently outrageous and extreme as a matter of law to survive the defendants' motion for summary judgment on that claim, the adverse summary judgment was clearly proper because Dr. Wong failed to set forth any proof of injury, which is a necessary element of such a claim. It is axiomatic that in addition to suffering conduct that is outrageous or repulsive, this tort also requires proof of injury, i.e., that the conduct in question caused *actual mental distress*. *Sears, Roebuck & Co. v. Devers*, 405 So. 2d 898 (Miss. 1981)(reversing finding of liability on this claim where there was no proof of either physical or mental injury); *see also* *Morrison v. Means*, 680 So. 2d at 807 (finding "hardly enough" evidence of injury where the appellee claimed to have suffered sleepless nights and mental anguish when he did not receive expected refund money that he had been counting on with which to support his family).

¶52. The record in this case does not reveal any proof of the requisite injury. Dr. Wong made the bare allegation in his complaint that the defendants "intentionally inflicted severe emotional distress and mental anguish." His brief in opposition to the defendants' motion for summary judgment merely stated that "Considering the impact defendants actions have had on Dr. Wong's professional career, it is not difficult to understand that Dr. Wong would reasonably be 'outraged' and 'repulsed' by the defendants' intentional disregard of his rights." None of the cases heretofore decided by this Court involve "distress" which is wholly composed of having suffered "outrage and revulsion," although of course the behavior must be outrageous and repulsive in the first place before it can be held tortious. The *Restatement (Second) Torts § 46* certainly seems to weigh against finding actionable such mild injury as Dr. Wong's sentiments about the Hospital's treatment of him (as opposed to Dr. Wong's resultant *suffering* which clearly could be actionable):

> The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Restatement (Second) Torts § 46 Cmt. d (1977).*

¶53. In light of Dr. Wong's failure to place into the record any proof of his mental anguish, a necessary element of the claim, we hold that the adverse summary judgment rendered below was proper.

*vi. defendants' claim that Dr. Wong is barred from bringing legal proceedings that arise out of the revocation of his privileges.*

¶54. Finally, the defendants (appellees) suggest that the judgment below should be affirmed because Dr. Wong is attempting to use various legal theories to circumvent the limited review that the court system can conduct of a hospital's decision to terminate a physician's medical staff privileges. They further suggest that Dr. Wong is not entitled to bring any legal action that arises out of the hospital proceedings that resulted in the termination of medical staff privileges. They have cited no authority for this remarkable proposition, other than this Court's opinion in Dr. Wong's first action, in which we stated, "No court should substitute its evaluation of [revocation decisions] for that of the Hospital Board....Human lives are at stake, and the governing board must be given discretion in its selection so that it can have confidence in the competence and moral commitment of its staff." ***Wong v. Garden Park***, 565 So. 2d at 553. Dr. Wong did not reply to this argument.

¶55. Although we have already held that the judgment below is to be affirmed, we can see no reason to further conclude that Dr. Wong is not entitled to pursue legal redress for harms done to him, simply because they arise out of the revocation of his hospital privileges. This Court's ability to reverse a termination decision, as was initially sought by Dr. Wong in his first action, is limited under Miss. Code Ann. § 73-25-93(1) to assessing whether the Hospital complied with its own bylaw requirements for due process. ***Wong v. Garden Park***, 565 So. 2d 550.

¶56. Also, Miss. Code Ann. § 73-25-93(2) limits doctors' claims for damages, providing that "There shall be no liability on the part of, and no cause of any action of any nature arising against, any hospital, hospital medical staff or hospital disciplinary body or members thereof, or their agents or employees, for any action taken without malice in carrying out the provisions of §§ 73-25-81 to 73-25-93."

¶57. At face value, this provision permits Dr. Wong to bring any action for damages or other non-reinstatement redress against the appellees in this case for their conduct if their conduct was undertaken *with malice*. There is no other statutory limitation, other than the preclusion of good-faith behavior, on a court's ability to hear claims and award damages to a claimant on the basis of the revocation of his privileges. Therefore, Dr. Wong is entitled to pursue whatever claims involving malice that he has remaining, providing that they are not barred by res judicata or collateral estoppel.

## CONCLUSION

¶58. As detailed in the foregoing discussion, our review of the record reveals that the summary judgment granted below was entirely proper, and therefore the judgment is affirmed.

**¶59. AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS, SMITH AND MILLS, JJ.,**

**CONCUR. LEE, C.J. AND McRAE, J., CONCUR IN RESULT ONLY.**

1. Dr. Wong's complaint alleges the substance of the breach to arise as follows: the defendants' failure to allow the Medical Care Evaluation Committee to inquire into complaints about Dr. Wong's performance before it convened an Executive Committee hearing on the topic, as it had initially promised to do; the failure of the Appellate Review Committee, an internal committee that reviews appeals from the Executive Committee's decisions to terminate privileges, to consider evidence submitted by Dr. Wong in his defense; the presence of a doctor who had personal biases against Dr. Wong on the Judicial Review Committee, the final internal committee that reviews termination decisions.

2. With regard to the defendant AMI, we note that Dr. Wong has offered no legal authority to support the notion that AMI was bound to abide by the bylaws' provisions in the first place, when AMI has never been a party to the contract. As we opined several years ago:

> It is a general rule of law of contracts that in order to maintain an action to enforce the breach of a contract, or to recover damages growing out of the breach, or for failure to carry out the terms of the contract, it is ordinarily a necessary prerequisite that the relationship of privity of contract exist between the party damaged and the party sought to be held liable for the breach of the contract.

*Burns v. Washington Savings & Loan*, 251 Miss. 789, 794, 171 So. 2d 322, 324 (1965).

Dr. Wong's reliance on *Pariser*, 816 F.2d 1248, is unavailing. The federal circuit court held in that case that the Hospital's management company was liable for the Hospital's breach of its bylaws only because the parties had been conducting themselves as though bound by that contract throughout the litigation.

To the contrary, in this case AMI could not be liable to Dr. Wong for any breach of the Hospital's bylaws, since it was not a party to a contract.

3. To the extent that the individual defendants could be said to have interfered with Dr. Wong's relationship with the Hospital in making their allegations against Dr. Wong, the circuit court found that the individual defendants were agents of the Hospital and, consequently, that their actions in this regard were attributable to the Hospital. Dr. Wong does not presently contest this legal conclusion.

4. This previous federal circuit court determination that Dr. Wong had not been subjected to state action was utilized by the federal district court in this action (recall that the defendants first removed this action into federal court) to dismiss, via the doctrine of collateral estoppel, Dr. Wong's claims that his federal due process rights were violated and to dismiss the State of Mississippi as a defendant.

5. The Court noted that there may be cases in which due process may require that an indigent parolee be assisted with counsel at his revocation hearing, where the issues are atypically complex.

*Mississippi State Probation and Parole Bd.*, 330 So. 2d at 566.