# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

No. 02-60415
Summary Calendar

_____

EOG RESOURCES, INC.,

Plaintiff-
Counter Defendant-
Appellee,

VERSUS

JESSE DEMPSEY BEACH, ET AL.,

Defendants,

PRESTON WAYDE GILL,

Defendant-
Counter Claimant-
Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
m 1:00-CV-351-BrR
m 1:00-CV-368-GR
m 1:00-CV-491-BrR

_____

November 26, 2002

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

EOG Resources, Inc. ("EOG"), sought a declaratory judgment for the right to conduct seismic exploration operations on Preston Gill's land. Gill appeals a summary judgment, and we affirm.

I.

EOG is a Houston-based corporation specializing in mineral exploration. Gill and other defendants are the record title owners of the surface estate in various tracts of land in Mississippi. EOG entered into seismic option/lease agreements with certain owners of mineral interests underlying defendants' lands. Under these agreements, EOG possessed the right to acquire oil, gas, and mineral leases and to conduct a geophysical survey.[1]

Despite EOG's alleged attempts to furnish defendants proof of its subsurface interest, defendants denied EOG the right to enter and use the land. Faced with a time-sensitive exploration project, EOG sued for declaratory, injunctive, and monetary relief. Gill answered *pro se* and filed a counterclaim for abuse of process and intentional infliction of emotional distress ("i.i.e.d.").

At a hearing on August 24, 2000, the district court announced that it would issue a preliminary injunction enjoining defendants from denying EOG access to their lands. In its order dated August 29, 2000, the court required EOG to obtain a security bond of $6000 before issuance of the preliminary injunction against Gill.[2]

EOC did not obtain a bond until September 6. Before the bond was issued, on August 27, EOC employees entered Gill's property with the intent of conducting seismic operations. Gill, who claims that he was worried about liability in the event of an accident, asked the employees for a copy of the injunction. When they were unable to comply, Gill told them to leave.

Later that day, Donnie Sport and Richard Fitzpatrick, representatives of EOG, came to Gill's house. In his amended counterclaim, Gill alleges that Sport "made false accusations of interference" by Gill and threatened him with legal action for his unwillingness to permit the employees access to his property. The district court granted summary judgment on EOG's declaratory judgment claim and ordered that Gill's counterclaim be dismissed on the merits.

II.

Gill argues that the district court erred in granting summary judgment on EOC's declar-

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Under Mississippi law, a mineral owner or lessee has the right to enter, occupy, and use as much of the surface as is reasonably necessary to explore, mine, and market minerals. *Larco Drilling Corp. v. Lee*, 207 So. 2d 634, 635 (Miss. 1968).

[2] "No preliminary injunction shall issue except upon the giving of security by the applicant, in such terms as the court deems proper . . . ." FED. R. CIV. P. 65(c). In this circuit, however, courts have the discretion to issue injunctions without security. *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978) (per curiam).

atory judgment claim. Under Mississippi law, the owner or lessee of subsurface oil, gas, and mineral rights has the right to enter, occupy and use as much of the surface as is reasonably necessary to explore, mine, and market minerals.[3] At the August 24 hearing, EOC presented evidence of its right to conduct seismic explorations on Gill's land. This evidence included certified copies of instruments from county records and the owner's seismic permits. Gill has never disputed the authenticity of this evidence. Because EOC is an undisputed lessee of the subsurface rights, the court properly granted summary judgment.[4]

## III.

The district court dismissed Gill's claims for abuse of process and i.i.e.d.. Gill complains that EOC wrongly named him as a defendant in the declaratory judgment action. He maintains that had EOC originally complied with his requests to furnish proof of its subsurface rights, he would have granted access, making litigation unnecessary. Gill seeks damages for the costs of maintaining the suit, including emotional distress. He also alleges that EOC's entry onto his land before issuance of the preliminary injunction constituted abuse of process and i.i.e.d.

We review a summary judgment *de novo. Pratt v. City of Houston*, 247 F.3d 601, 605-06 (5th Cir. 2001). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the evidence, we draw all reasonable inferences in favor of the nonmoving party and avoid credibility determinations and weighing of the evidence. *Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150-51 (2000).

## A.

Gill contends that EOC abused the judicial process by unnecessarily naming him as a defendant. Had EOC simply demonstrated proof of its subsurface rights, Gill says, he would have allowed the company access to his property, making litigation unnecessary. Referencing the apparent time-sensitive nature of EOC's seismic project, Gill contends that EOC was "more interested in procuring a Temporary Court Injunction to force [him] into submission than to take that amount of time required to properly provide proof" of their subsurface rights. Further, Gill points to EOC's entry on his property before issuance of the preliminary injunction. EOC defends its actions as consistent with the court's ultimate decision on the merits.

Abuse of process is "the misuse or misapplication of a legal process to accomplish some purpose not warranted or commanded by the writ." *State for Use and Benefit of Foster v. Turner*, 319 So. 2d 233, 236 (Miss. 1975).[5] In

---

[3] *E.g., Charles F. Hayes & Assocs., Inc. v. Blue*, 233 So. 2d 127, 128 (Miss. 1970); *Larco Drilling Corp. v. Lee*, 207 So. 2d 634, 635 (Miss. 1968).

[4] Gill's argument that EOC failed to provide him with evidence of its subsurface rights before the preliminary injunction hearing is immaterial for purposes of the declaratory judgment claim.

[5] From the pleadings, it is not entirely evident whether Gill has alleged a claim for abuse of process or malicious prosecution, or both. Certainly,
(continued...)

Mississippi, an abuse of process claim is established by showing "(1) that the defendant made an illegal and improper perverted use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and (3) that damages resulted to the plaintiff from the irregularity." *Id.* To survive summary judgment, Gill must show that a genuine issue of fact exists as to each element. *Williamson v. Keith*, 785 So. 2d 390, 394 (Miss. 2000).

For purposes of an abuse of process claim, a party makes an illegal and improper perverted use of the judicial process only *after* suit has been filed.[6] *Woolfolk v. Tucker*, 485 So. 2d 1039, 1042 (Miss. 1986). A party makes improper use of the judicial process where, for example, he mistakenly fails to serve the opposing party with a copy of a subpoena for medical records. *Williamson*, 786 So. 2d at 394. On the other hand, where a party files a suit for impermissible reasons, the proper remedy is malicious prosecution, not abuse of process.

For example, in *Foster*, defendants could not make out a claim for abuse of process where they instituted criminal proceedings against the plaintiffs for purely self-serving reasons. Foster*, 319 So. 2d at 236. If EOC made an improper use of the judicial process by filing an unnecessary lawsuit,[7] Gill's proper remedy is a claim for malicious prosecution, not abuse of process.

The only unlawful action alleged by Gill to have taken place after the commencement of legal proceedings is EOC's entry upon his land on August 27. Gill alleges that EOC breached the terms of the preliminary injunction by failing first to secure a bond for $6000, as required by the preliminary injunction order dated August 29. EOC does not dispute that it failed to follow the terms of the injunction. Certainly, the company's ultimate success on the merits does not justify its blatant disregard of the order.

This, without more, is insufficient, however, to maintain an abuse of process claim. Given the district court's inherent power to determine the propriety of security before issuing a preliminary injunction,[8] the court's failure to initiate contempt proceedings against EOC weighs heavily against our finding a fact issue as to abuse of process. In addition, Gill's failure to allege particular damages stemming from EOC's violation further supports the

---

[5](...continued)
he cannot make out a claim for malicious prosecution, which requires that a plaintiff first establish that the underlying proceedings were terminated in his favor. *Turner*, 319 So. 2d at 235.

[6] *Foster*, 319 So. 2d at 236 ("An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued."); *see also Moon v. Condere Corp.*, 690 So. 2d 1191, 1197 (Miss. 1997) (noting that "the defendant's complaint was not based on any perversion of any process, rather it was based simply on the filing of the suit").

[7] Although we do not decide the issue, we have located no authority supporting Gill's claim that Mississippi law requires a subsurface owner or lessee initially to notify the surface owner before commencing seismic explorations.

[8] *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B Feb. 1981); *Corrigan Dispatch*, 569 F.2d at 303.

4

conclusion that an abuse of process claim is inappropriate here.

## B.

On the i.i.e.d. claim, under Mississippi law, liability is proper only where "the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[9] Liability "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Wong*, 700 So. 2d at 306.[10] For example, the immediate firing of an employee under an at-will employment contract does not constitute i.i.e.d. *Fuselier, Ott & McKee v. Moeller*, 507 So. 2d 63, 69 (Miss. 1987). A police officer who arrested a minor for driving his parents' car without a license could not be liable for i.i.e.d. after the minor committed suicide.[11] *White v. Walker*, 950 F.2d 972, 978

---

[9] *Wong v. Stripling*, 700 So. 2d 296, 306 (Miss. 1997) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1977)).

[10] In *Wong*, the court also wrote: "The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt." *Id.*

[11] In *Continental Cas. Co. v. Garrett*, 161 So. 753 (Miss. 1935), the court permitted recovery for a plaintiff whose feeble medical condition worsened after a representative of the defendant insurance company came to his home and insulted him with false accusations. The court premised its finding
(continued...)

(5th Cir. 1991).

Gill alleges that Sport's insults and threats of legal action were sufficiently outrageous to support his i.i.e.d. claim. We disagree. Sport's reaction may have been inappropriate, but it was not the type of behavior that might be characterized as utterly intolerable in a civilized community. Gill has not alleged any damages beyond "mental stress"SShe cites no verifiable physical ailments resulting from his encounter with Sport. Along with the fact that miscommunication appears to have been the cause of Sport's belief that his crew was entitled to begin seismic operations on Gill's land, we see no basis for the i.i.e.d. claim.

AFFIRMED.

---

[11](...continued)
of liability on the "rights of the home." *Id.* at 755.

Gill asks us to apply this holdingSSwhich is over fifty years oldSSto the facts of this case. We decline to do so. *See White*, 950 F.2d at 978 (characterizing *Garrett* as "out of date" and noting that "[w]e doubt that a contemporary court would impose liability" based on its holding). Unlike the plaintiff in that case, Gill has not alleged that he suffered a physical ailment as a result of Sport's visit to his house on August 27, 2000.