United States Court of Appeals,

Fifth Circuit.

No. 93-1450.

Summary Calendar.

Denise NASH, Plaintiff-Appellant,

v.

ELECTROSPACE SYSTEM, INC. and John Sharp, Individually, Defendants-Appellees.

Dec. 17, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before DAVIS, JONES, and DUHÉ, Circuit Judges.

PER CURIAM:

Summary judgment was granted for the employer in this case in which Ms. Nash, a former clerical worker for Electrospace System, Inc. (ESI), alleged sexual harassment and retaliation for filing an EEOC claim.[1] We affirm, because Nash's claims of harassment, even if true, did not refute the efficacy of ESI's procedures for responding to alleged sexual harassment. When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability.

Nash did not respond to ESI's motion for summary judgment, which ESI supported by excerpts from Nash's deposition testimony and the affidavit of Margaret Schafer, director of the company's Human Resources Department. Thus, although this court reviews summary judgment evidence in the light most favorable to the non-movant, there is no controverting evidence set forth in the record below to buttress Nash's allegations.

Nash began working for an affiliate of ESI in mid-1989 as a computer data entry operator. Later, she transferred to ESI and began performing secretarial and research functions. In September 1990, she was transferred to ESI's accounting department where she was assigned to work under the

[1]Nash sued John Sharp, the alleged perpetrator of harassment, under state law. Her claim against him was dismissed by the court when it dismissed the federal law claim against ESI. 28 U.S.C. § 1367 (Supp. II 1990).

supervision of tax attorney John Sharp. Despite this first-line supervisory role, Sharp did not control the terms and conditions of Nash's employment. Rather, such decisions were made by Sharp's boss, accounting department manager C. Edwin Wilson, in conjunction with the Human Relations Department.

Nash alleged that during the fall of 1990, Sharp subjected her to a barrage of questions about her personal sex life. She acknowledges that he did not undertake any *quid pro quo* harassment, such as inviting her into any type of personal relationship as a condition of employment. The record contains no intimation of offensive touching. Nevertheless, Nash was offended by the intrusive sexual questions. During the same period of time, she received several sexually suggestive anonymous phone calls at her home, which she believed came from Sharp. She never pursued this charge against Sharp either directly with him or with the company, however, and after she obtained an unlisted telephone number, the calls ceased.

Nash conceded that her performance in the tax accounting department was not up to par. By January 1991, she received a memorandum from Sharp criticizing particular errors she had made. She described this memorandum as "constructive criticism." In the meantime, she had ceased responding to Sharp's personal questions.

After discussing her allegations against Sharp with a co-worker on Friday, February 22, 1991, Nash approached the personnel department and was immediately called for an interview by ESI's Director of Human Resources Margaret Schafer. During the next week, Ms. Schafer's affidavit attests, she interviewed both John Sharp and Nash's female co-workers to investigate the allegations. Sharp denied that his conversations with Nash were anything other than voluntary and maintained that his questions were not calculated to be sexually hostile, inappropriate or intimidating. Schafer instructed Sharp not to converse with Nash during the investigation.

The following Friday, March 1, Schafer transferred Nash provisionally to another department and within days found her another permanent position as department secretary in the Data Logistics Department. This transfer had no effect on Nash's pay rate or benefits. In fact, by the following June, Nash received a performance-based increase. In her deposition, Nash could not explain why she

regarded this transfer to the Data Logistics Department as "retaliatory". She admitted it was not an adverse employment decision. Further, after the transfer, Nash made no more complaints about sexual harassment, nor did she work anymore around John Sharp. She quit work that summer to return to college.

For summary judgment purposes, the court inquires whether there is evidence in the trial court record that creates a genuine issue of material fact regarding Nash's allegations. *See Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358, 1364 (5th Cir.1987). To establish an actionable claim of sexual harassment in the work place, a plaintiff must demonstrate:

> (1) That she belongs to a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a "term, condition or privilege of employment"; and (5) that the employer either knew or should have known of the harassment and failed to take prompt remedial action.

*See Jones v. Flagship International,* 793 F.2d 714, 719-20 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). The Supreme Court recently affirmed that sexually discriminatory verbal intimidation, ridicule and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII. *Harris v. Forklift Systems, Inc.,* --- U.S. ----, ----, 114 S.Ct. 367, 370-71, --- L.Ed.2d ---- (1993) (citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). The Court further determined that whether an environment is "hostile" or "abusive" can be "determined only by looking at all the circumstances ... [, such as] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at ----, 114 S.Ct. at 371. Following *Harris,* it appears that Nash's allegations against Sharp could, if sufficiently severe and pervasive, support a Title VII claim for subjecting Nash to a sexually abusive work environment. We take some liberty in drawing this conclusion because Nash never filed a response to ESI's motion for summary judgment, and we assume that Nash might have shown that Sharp's questions, if frequent and bothersome enough, might have interfered with her ability to perform her work.

*Harris* does not, however, support the proposition that in all such cases, an employer will be held liable for a violation of Title VII. An employer becomes liable for sexual harassment only if it knew or should have known of the harassment and failed to take prompt remedial action. *See Jones,* 793 F.2d at 720. As the offender in *Harris* was the company president, the issue of respondeat superior liability never arose. This case poses a more typical situation, in which the alleged offender, though in some ways a direct supervisor of Nash's work, was not responsible for the terms and conditions of her employment, for her work assignment within the company, or for hiring or firing decisions. The summary judgment record does not establish that anyone within the company hierarchy was aware of Nash's complaints against Sharp until she went to the personnel department on February 22, 1991. The record also contains no evidence that Sharp's conduct took place in public, under the eye of co-workers or supervisors. It thus appears that the company did not know nor should it have known of Sharp's offensive inquisitiveness about Nash until she complained to those with authority to address the problem.

For this reason, we focus on Schafer's affidavit of the actions she took when confronted with Nash's charges. The company is not liable under Title VII unless it failed to take prompt remedial action. Schafer immediately began an investigation of Sharp and his co-workers. She could not corroborate Nash's allegations, because Sharp denied engaging in harassment and co-workers had not experienced offensive behavior by him. Schafer decided to transfer Nash to another department with no loss of pay or benefits. The investigation and transfer were accomplished within one week of Nash's first complaints. Surely this decision reflected a prudent response to an unpleasant situation. The fact of Nash's transfer represents not retaliation, but an act that insulated her from further contact with Sharp. The record suggests that the transfer was successful, because Nash got along well with her new boss and soon qualified for a raise. The company also produced a written policy against sexual harassment that had been in effect for a number of years, and Schafer's affidavit states that information about the policy was specifically conveyed to all newly hired employees.[2]

---

[2]The availability of a formal grievance procedure at ESI should be counted strongly in ESI's favor here because Nash—per her deposition testimony—knew Sharp had no authority to terminate her.

While *Harris* proclaims that sexually hostile or abusive work environments are no longer to be tolerated under Title VII, that fact does not transform Title VII into a strict liability statute for employers. An employer is liable only if it knew or should have known of the employee's offensive conduct and did not take steps to repudiate that conduct and eliminate the hostile environment. *See Jones,* 793 F.2d at 720. Nash produced no such evidence in this case. The uncontested evidence demonstrates a model of prompt, sensitive employer handling of these very traumatic cases.

The judgment of the district court is accordingly AFFIRMED.