Long v. Tillotson Health Care Corp.    CV-95-596-SD.P   03/19/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Joan Long

    v.                                        Civil No. 95-596-SD

Tillotson Health Care Corporation


**O R D E R**


In this civil action, plaintiff Joan Long claims she was sexually harassed by her supervisor.  At the time of the alleged harassment, Long was a production worker at a rubber glove factory owned by defendant.  The complaint contains claims against defendant Tillotson Healthcare Corporation (formerly Tillotson Rubber Company) for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and for violation of state law.

Presently before the court is defendant's motion for summary judgment (document 8), to which plaintiff objects.  Defendant argues that judgment should enter in its favor on the harassment claim because the undisputed facts show that it did not know, nor should it have known, of the alleged sexual harassment. Defendant also argues that judgment should enter in its favor on the retaliation claim because of the absence of evidence that

Long engaged in any activity protected by Title VII. The court agrees with defendant. Also before the court is plaintiff's assented-to motion for voluntary dismissal of Counts IV (enhanced compensatory damages) and VI (negligent hiring, supervision, training, and retention) (document 11).

## Background

Joan Long began working for defendant Tillotson as a machine operator in November of 1989. Her work entailed pulling hot rubber gloves off a machine. It is undisputed that throughout her employment at Tillotson Long remained a good and valued employee.

In the summer of 1990, Long began dating her supervisor, Leo Drapeau, and eventually began having sexual relations with him. All sides agree that the relationship was consensual. Drapeau ended the relationship in October of 1991. See Deposition of Joan M. Long at 107 (attached to defendant's motion). Within a month or two after the relationship ended, Paula Wolfinger, the personnel manager at the plant, learned of the relationship's end. Wolfinger told Long to come to her if she had any problems working with Drapeau; Wolfinger also said that it was not a good idea for two people who had just ended a relationship to work the same shift. See id. at 117. At that time, Long was not having

2

any difficulty working with Drapeau, and she told Wolfinger the same. See id. at 118. However, shortly thereafter, Long claims that Drapeau began to sexually harass her at work by doing such things as blowing kisses at her, grabbing her bottom, and making suggestive comments and noises. No one witnessed the alleged harassment. See id. at 119.

Long told no manager at Tillotson about Drapeau's behavior until February 12, 1993, when she informed the plant manager, Richard Hall, about an incident that had occurred between her and Drapeau. See Deposition of Richard F. Hall at 161-65. Long stated that Drapeau had approached her at her machine and angrily accused her husband of slashing his tires. Long Deposition at 159-62. Hall responded that he would talk with Drapeau. Two or three hours after speaking with Hall, Long noticed that Hall had not yet spoken to Drapeau and also saw Drapeau staring at her. See Long Deposition at 163. Long then left the premises. She returned soon after to ask for either her job back or assistance in obtaining unemployment benefits. Hall and Wolfinger told her she could come back to work on the condition that she work a different shift. See id. at 166. Long chose the "first shift" so she could work in the daytime, although it meant having her pay cut by 50 cents per hour.

Long continued in the first shift until one day in May of

3

1993.  On that day, it became necessary for Drapeau to cover as the supervisor on the first shift.  Hall testified that either he or Wolfinger made sure Long knew Drapeau would be covering the shift and that Long stated it would not be a problem.  See Hall Deposition at 193.  Hall also attempted to be on the floor so he could observe.  Despite these precautions, Drapeau grabbed Long's rear end.  See Long Deposition at 179.

Long finally left Tillotson on May 18, 1993.  On that day, Long complained to her shift supervisor, Donna Day, that her machine was too hot.  Long then told Hall, who made some adjustments, but the machine continued to give off heat.  According to one of Long's co-workers, Hall intentionally adjusted the wrong latches because he wanted to force Long to resign.

Long filed a claim of sexual harassment with the New Hampshire Human Rights Commission on August 10, 1993, and received a right-to-sue notice.  She filed the instant action on December 12, 1995.

## Discussion

## 1.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a

judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; <u>Lehman v. Prudential Ins. Co. of Am.</u>, 74 F.3d 323, 327 (1st Cir. 1996). Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  <u>Stone & Michaud Ins., Inc. v. Bank Five for Savings</u>, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case." <u>Celotex Corp. v. Catrett,</u>, 477 U.S. 317, 322-23 (1986).  It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'"  <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 841 (1st Cir. 1993) (quoting <u>Anderson</u>, <u>supra</u>, 477 U.S. at 256), <u>cert. denied</u>, ___ U.S. ___, 114 S. Ct. 1398 (1994).  Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party."  <u>Id.</u> at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. <u>Anderson</u>, <u>supra</u>, 477 U.S. at

5

255.  Nevertheless, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

2.  Count I: Sexual Harassment In Violation of Title VII

Tillotson argues that no basis exists to hold it liable for Drapeau's alleged sexual harassment of Long.  Thus, Tillotson asks that the court grant it summary judgment on Count I, which alleges that Drapeau sexually harassed Long by creating a hostile environment in violation of Title VII.

In order to hold an employer liable for its supervisor's hostile environment harassment (as opposed to quid pro quo harassment), a plaintiff must show that the employer knew or should have known of the harassment's occurrence.  See Lipsett v. University of Puerto Rico, 864 F.2d 881, 901 (1st Cir. 1988) (following Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 72 (1986)); Katz v. Dole, 709 F.2d 251, 256 (4th Cir. 1983).  If plaintiff sustains his or her burden, the employer will be liable unless the employer can show that it took reasonable steps to stop the harassment.  This standard assures that employers will

6

not be automatically liable for hostile environment sexual harassment committed by their supervisors.  Cf. Meritor Sav. Bank, supra, 477 U.S. at 72.  However, by the same token, "absence of notice to the employer does not necessarily insulate that employer from liability."  Id.

Plaintiff's sexual harassment claim spans two relevant periods: (1) from the time marking the end of her "consensual relationship" with Drapeau (October 1991) up until the day she began working a different shift with a different supervisor in February of 1993, and (2) the one instance in which Drapeau supervised her in her new shift in May of 1993.  The record reveals that plaintiff never gave her employer actual notice that Drapeau was sexually harassing her on any of these occasions. Instead, plaintiff claims that Tillotson had constructive knowledge of sexual harassment.

Plaintiff's argument is belied by several factors the court views to be significant. First, plaintiff admits that Drapeau's behavior occurred when no one was around.  As is often the case with sexual harassment, the perpetrator acted when the coast was clear.  Unfortunately for plaintiff, the very clandestine nature of Drapeau's conduct undermines plaintiff's assertion that Tillotson should have known of the harassment.  See, e.g., Nash v. Electrospace Sys., 9 F.3d 401, 404 (5th Cir. 1993) (noting

7

that where harassment did not take place in public, employer likely had no constructive knowledge of same).

Second, plaintiff admits that despite the intervention of the personnel manager and the plant manager, she never revealed that Drapeau was sexually harassing her. Plaintiff argues that these individuals never asked her point blank if she was being sexually harassed. Nonetheless, these individuals, by intervening as much as they did and asking whether plaintiff was having "a problem" with Drapeau, certainly acted appropriately, and were entitled to rely upon plaintiff's assertion that nothing was wrong, particularly as plaintiff never expressly indicated she was being sexually harassed. An employer is not required to be a mind-reader before avoiding liability under Title VII for hostile environment sexual harassment. Cf. Murray v. New York Univ. College of Dentistry, 57 F.3d 243, 250-51 (2d Cir. 1995) (holding in Title IX action that university did not have constructive knowledge of sexual harassment where student failed to notify university that harassment continued following reprimand of harasser).

Finally, the evidence of the hostile environment was not so "pervasive and so long continuing . . . that the employer must have become conscious of [it]." See Meritor Sav. Bank, supra, 477 U.S. at 72. Long alleges that she was harassed only by one

8

person, Drapeau, in private.  The evidence does not indicate that the atmosphere at Tillotson was so permeated with sexual innuendo or hostility that Tillotson could be said to have had constructive awareness of Drapeau's behavior.

As evidence of Tillotson's knowledge of the sexual harassment, Long notes that Drapeau may have previously sexually harassed another of his employees following the end of a romantic relationship with her.  Long states that Drapeau told her that the woman "possibly" had brought sexual harassment charges against him.  See Long Deposition at 48, 111.  However, Long does not state that Drapeau said the woman informed Tillotson.  Moreover, the woman herself signed an affidavit stating that she never complained to anyone at Tillotson about Drapeau.  See Affidavit of Tammy Lamper ¶ 4 (attached to defendant's motion).  In addition, Long notes that the woman was transferred off Drapeau's shift soon after the relationship ended and then was promoted several times by Tillotson.  Finally, Long notes that both the personnel manager (Wolfinger) and the plant manager (Hall) were "gravely concerned" about the consequences of Drapeau's and Long's working together after their romantic relationship had ended.  See Objection at 19.  Even assuming that Tillotson was aware that Drapeau had previously harassed another employee, the court finds that under the unique circumstances of

9

this case, no reasonable juror could find that such evidence indicates that Tillotson had constructive knowledge of Drapeau's subsequent harassment of Long or that Tillotson failed to take steps to halt the harassment. As discussed above, it is undisputed that when the relationship ended, the personnel manager approached Long and expressly told her to go to her if she had any problems working for Drapeau, but Long did not inform anyone about her problems with Drapeau until much later.

Long also argues that she never told Tillotson management about the harassment because she feared either that she would lose her job or that management would not do anything about it. However, as plaintiff fails to submit any evidence to support why she had such belief, this argument is clearly meritless. Plaintiff's situation is plainly distinguishable from the situation described in Meritor Savings Bank, in which the employer's grievance procedure was flawed because an employee was required to complain to her supervisor, who was the alleged perpetrator. See Meritor Sav. Bank, supra, 477 U.S. at 72-73. Here, Long had the opportunity to complain to a neutral third party, Wolfinger, who had evinced concern for her welfare in the past.

Finally, Long argues that she attempted to inform the plant manager of the sexual harassment on February 12, 1993, the day

10

she walked off the job because of an angry attack made by Drapeau. Even assuming that what Long told the manager could be described as "sexual harassment," management took reasonable steps to end the harassment by promptly transferring her to a different shift, where she would not be supervised by Drapeau.[1]

The court finds and rules that, when viewed in a light most favorable to her, plaintiff's evidence is insufficient to show that Tillotson had constructive knowledge of the sexual harassment. As there is no basis to establish its liability for Drapeau's conduct, Tillotson is entitled to summary judgment on the sexual harassment claim.

## 3. Count 2: Retaliation in Violation of Title VII

Defendant next seeks summary judgment on plaintiff's retaliation claim. Where, as here, plaintiff has no direct evidence of her employer's retaliatory motivation, she may make use of the familiar burden-shifting framework that originated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996). Under this scheme, plaintiff can make out a prima facie case of retaliation by proving that: (1) she engaged in conduct

---

[1] Given that, in the spectrum of harassment, Drapeau's yelling about the tire slashing was not egregious, the employer's response was eminently reasonable. See, e.g., Baskerville v. Culligan Intern Co., 50 F.3d 428, 432 (7th Cir. 1995) (observing that the reasonableness of the employer's response can be measured by considering "the gravity of the harassment").

11

protected by Title VII; (2) she suffered an adverse employment action; and (3) the adverse action causally related to her conduct.  See id.; Hoeppner v. Crotched Mountain Rehabilitation Ctr., 31 F.3d 9, 14 (1st Cir. 1994).

Following plaintiff's prima facie showing, the burden shifts to defendant to "articulate a legitimate, nonretaliatory reason for its employment decision."  Fennell, supra, 83 F.3d at 535. The burden of production[2] then returns to plaintiff, who must show both that the defendant's reason is a pretext and that defendant possessed retaliatory animus.  Id.  Finally, it should be noted that

> [o]n summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus.

Id.

Plaintiff bases her retaliation argument on the consequences she suffered as the result of complaining to Hall about Drapeau's angry remarks to her concerning the slashing of his tires. Defendant argues that plaintiff is unable to satisfy the first element of her prima facie case--that she engaged in conduct protected by Title VII.  Defendant cites the following excerpts from Long's deposition, in which she admits that the incident

_____

Unlike the burden of production, the burden of persuasion remains at all times with plaintiff.

12

about which she complained was not sexual in nature:

> Q: The whole confrontation concerned the tires and accusing your husband, right?
> A: Yes.
> Q: It didn't have anything to do with your sex, did it?
> A: With what?
> Q: It wasn't sexually related in any manner, was it?
> A: No.
> Q: It had to do with the tires?
> A: Yes.

Long Deposition at 160.

To make a prima facie showing of retaliation, plaintiff need not prove that the conduct complained of amounted to a Title VII violation. "It is enough that the plaintiff had a reasonable, good-faith belief that a violation occurred [and] that [s]he acted on it . . . ." Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992).

Although plaintiff argues in conclusory fashion that her complaint to Hall was in fact a good-faith attempt to complain about sexual harassment, she provides no evidence to support her assertion. Nothing in the record reveals that the tire-slashing incident had sexual overtones, or that plaintiff even believed as much. Therefore, the court finds and rules that defendant is entitled to summary judgment on plaintiff's retaliation claim on the grounds that there is no evidence that plaintiff engaged in conduct protected by Title VII. See, e.g., Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir. 1995) (holding that letter complaining of unfair treatment, but not age

13

discrimination, was not "protected conduct"). Cf., Murray, supra, 57 F.3d at 250 (holding that student's request for "help", without mentioning sexual nature of harassing conduct, did not give school constructive notice of sexual harassment).

Alternatively, even assuming arguendo that plaintiff's complaint to Hall did concern sexual harassment, the court notes that plaintiff has submitted evidence insufficient to show that defendant took "adverse" action against her, or that defendant acted with retaliatory animus. After Long complained, Hall informed plaintiff that she could have her choice of any one of the three remaining shifts. Plaintiff chose the first shift because of its daytime hours, but did so reluctantly because it paid 50 cents less per hour. Under the circumstances of this case, the court finds as a matter of law that this slight reduction in pay does not amount to an adverse action on the part of the employer, particularly as plaintiff was given her choice among the three shifts.[3]

---

Plaintiff also asserts that she was forced out of her job in May of 1993, more than two months after her complaint to Hall, when Hall failed to fix her machine. Even assuming this one event amounted to an adverse employment action, plaintiff fails to produce any evidence of retaliatory animus. Even the affidavit of a co-worker, supplied by plaintiff, states that Hall demanded that all machines in the factory be operated at as high a heat as possible "because he felt that it gave better glove quality." Affidavit of Harold G. Foss, Jr. ¶ 20 (attached to plaintiff's objection).

## Conclusion

For the reasons stated above, the court grants defendant's motion for summary judgment (document 8) as to plaintiff's federal claims.  In addition, the court elects not to exercise jurisdiction over plaintiff's remaining state law claims and therefore denies plaintiff's assented-to motion to dismiss certain counts (document 11) as moot.  The clerk shall enter judgment accordingly.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

March 19, 1997

cc:   Heather M. Burns, Esq.
      Kevin M. Fitzgerald, Esq.