**Frankie OCHOA**

**v.**

**TEXAS METAL TRADES COUNCIL, aka International Association of Machinists and Aerospace Workers, Local Union # 1446, AFL—CIO; Union Carbide Corporation; Ronald P. Weaver and Weldon Hall.**

No. Civ.A. G–96–628.

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 23, 1997.

---

Sheila Beth Owsley, Sheila Owsley and Associates, Houston, TX, for Frankie Ochoa, Plaintiff.

Russell G. Burwell, Burwell, Enos & Baron, Texas City, TX, for Texas Metal Trades Council, AFL—CIO, Ronald P. Weaver, Weldon Hall, Defendants.

Barbara L. Johnson, Wickliff & Hall, Houston, TX, for Union Carbide Corp, Defendant.

### ORDER

KENT, District Judge.

Plaintiff Frankie L. Ochoa brings this action against Defendants alleging unlawful discrimination and retaliation based on his national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., breach of the duty of fair representation, and refusal of Union membership in violation of section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Ochoa also brings state law actions for defamation, interference with business contract, intentional infliction of emotional distress, assault, and invasion of privacy against the various Defendants. Now before the Court are the Motions for Summary Judgment of Defendant Union Carbide Corporation and of Defendants Texas City Metal Trades Council, Ronald P. Weaver, and Weldon Hall, both filed September 5, 1997. For

the reasons stated below, Union Carbide's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part, and the Motion for Summary Judgment of Defendant Texas City Metal Trades Council and the individual Defendants Weaver and Hall is **GRANTED.**

## I. FACTUAL BACKGROUND

*Plaintiff's Complaints*

Plaintiff Ochoa began work as a garage mechanic in the Maintenance Department at the Union Carbide manufacturing plant in Texas City, Texas on August 15, 1994. In September of 1995, Ochoa complained to the Leadman[1] in the garage that he and another employee had been deprived of an overtime opportunity by Defendant Weaver while Weaver had been serving as temporary Leadman. When the Maintenance Supervisor, Bob Janik, called Ochoa in to speak with him about the overtime complaint, Ochoa made several other complaints. First, Ochoa complained that he had been harassed by two other employees about his failure to join the Union. Apparently, Ochoa was the only employee in the garage who was not a member of the Machinists Union which represented the garage employees at Union Carbide. According to Ochoa, Defendants Weaver and Weldon Hall threatened to put up signs in the garage stating "no free riders." In May of 1995, Ochoa asked for an application to the Union, but later asked that it be placed on hold after receiving more harassment from Hall.

Ochoa also reported to Janik incidents involving Defendants Hall and Weaver which he had not previously reported. Ochoa told Janik that he had observed Weaver stealing automotive supplies, and that he witnessed a fight between Hall and another employee in which Hall pulled out a knife, threatening the other employee. Ochoa also reported that he had heard another garage mechanic, Larry Armstrong, use a racial epithet in describing black people.

---

1. The function of the Leadman is primarily to distribute work to fellow employees. The Leadman is not a member of management.

More germane to the case at hand are reports by Ochoa that, shortly after he began work in the garage, he began to find newspaper articles left by an unknown person on his workbench. The articles involved topics such as Colombian drug lords, Fidel Castro, pollution in Mexico City, and recipes for preparing Mexican food. Ochoa also found an article about the shooting death of his cousin, Bruce Ochoa, on his workbench. On other occasions, an unknown person would change the radio station in the garage or in the maintenance shop truck to a Spanish music station.

Finally, Ochoa has alleged that Hall drew a cartoon of two Mexican characters and called them "Hose A" and "Hose B." Ochoa also alleges that Hall told him that the only reason Ochoa had gotten the job was because he is a minority.

Although Ochoa claims in his Response to the Motion for Summary Judgment that he "complained for over a year, without any action being taken by Union Carbide," it appears from the evidence that Ochoa did not bring any of his complaints to the attention of Union Carbide management until September of 1995, almost a year after they allegedly began to occur.

### Union Carbide's Reaction

After Janik learned of the complaints by Ochoa, Ochoa met with Janik, Kevin Bauman, Maintenance Department Head, and Kim Holthusen, Human Resources Administrator. Ochoa was interviewed by Union Carbide management three times about his complaints. Union Carbide management allegedly interviewed every employee in the maintenance garage with regard to Ochoa's complaints on September 26, 1995. They suspended Hall, with pay, on September 29, 1995, pending the investigation of the alleged knife fight in January of 1995. On October 3, 1995 management allegedly met with the garage employees to review the plant's harassment policies. Union Carbide also has granted Ochoa three leaves of absence, and offered to give him the position of apprentice chemical operator on April 12, 1996. Ochoa turned the position down because it required shift work and more education, and awarded less compensation.

Finally, on August 12, 1996, Union Carbide informed Ochoa that he would have to return to work in the garage, and that his failure to return would be considered a voluntary quit. Ochoa returned to the garage in late October of 1996, but is currently on an 18–month leave of absence, without pay, which began on November 21, 1996.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The Court must accept the evidence of the non-moving party and draw all justifiable inferences in favor of that party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by pointing out to the Court that there is an absence of proof on any essential element of the nonmovant's case. *Id.*, 477 U.S. at 325, 106 S.Ct. at 2554. Once this burden is met, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours and Co.*, 58 F.3d 193, 195 (5th Cir.1995). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead must come forward with specific facts to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (citing FED.R.CIV.P. 56(e)). The mere exis-

tence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that no reasonable fact-finder could find in favor of the nonmoving party, summary judgment must be granted. *Id.; see also Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

**B.** *Title VII Claims Against Union Carbide*

Plaintiff alleges that Defendant engaged in discriminatory conduct with respect to his employment based on his national origin. Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides in relevant part:

> It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). A Title VII claims requires a showing of intentional discrimination. To establish a prima facie case of discrimination based on national origin under Title VII, Plaintiff must show, by a preponderance of the evidence, that:

> (1) he is a member of a protected class;
>
> (2) he was subject to unwelcome harassment;
>
> (3) the harassment was based on his national origin;
>
> (4) the harassment affected a term, condition, or privilege or employment; and
>
> (5) the employer either knew or should have known of the harassment and failed to take prompt action.

See *Nash v. Electrospace System, Inc.,* 9 F.3d 401, 403 (5th Cir.1993); *Jones v. Flagship Int'l,* 793 F.2d 714, 719 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).

After reviewing the summary judgment evidence in this case, including primarily the deposition of Ochoa,[2] the Court is persuaded that summary judgment is not appropriate on Plaintiff's claims against Union Carbide. Ochoa's allegations, especially those that he was constantly harassed by other employees, that the garage atmosphere was "hostile," and that he was passed over for overtime opportunities and career advancement possibilities, paint a disturbing picture of discrimination within Union Carbide, which was at least potentially based on national origin. It appears that Ochoa was working at a company where opportunities were not equally awarded and where management, either through its managers or through its employees who distributed work, turned a blind eye to problems of prejudice within the employee ranks. That Union Carbide did not condone the actions of its employees, or even that it investigated Ochoa's complaints, does not change the fact that the hostile environment existed to the detriment of Union Carbide's employees and that the company did not remedy the situation. Although the Court is not, at this stage, judging this case on its merits, the evidence as presented on summary judgment clearly establishes a fact issue as to whether Union Carbide discriminated and retaliated against Plaintiff. Accordingly, Union Carbide's Motion for Summary Judgment is **DENIED** as to Plaintiff's Title VII claims.

**C.** *Defamation and Intentional Infliction of Emotional Distress Claims Against Union Carbide*

Pursuant to 28 U.S.C. § 1367, the Court declines to exercise supplemental jurisdiction

---

**2.** Indeed, the Court notes that it can rely on almost none of the other summary judgment evidence submitted by Plaintiff, as it is consists mostly of unsworn letters. The two sworn affidavits from fact witnesses contain primarily hearsay and facts not within the witnesses' personal knowledge, as pointed out by Defendants. Such evidence is incompetent, and insufficient for summary judgment purposes. FED.R.CIV.P. 56(e) provides that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Therefore, the Court has not considered such evidence in Plaintiff's Motion.

over the state law claims in this case. Accordingly, Defendant Union Carbide's Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's claims of defamation and intentional infliction of emotional distress, and those claims are **DISMISSED WITHOUT PREJUDICE.**

### D. *Claims Against Texas City Metal Trades Council*

■ Against Defendant Texas City Metal Trades Council ("TCMT"), Plaintiff asserts in his First Amended Complaint claims of unlawful discrimination on account of his national origin and unlawful retaliation in violation of Title VII and the collective bargaining agreement, breach of duty of fair representation in violation of section 301 of the Labor Management Relations Act, defamation, interference with business contract, and intentional infliction of emotional distress.

The evidence presented indicates that Plaintiff attempted to join the International Association of Machinists and Aerospace Workers ("Machinists") in May of 1995, but withdrew his application in "the next few days" because he received more harassment from Hall and was not certain he wanted to be in the same union with him. He then attempted to apply again, in June of 1996, but this time the Recording Secretary of the Machinists, Doug Anderson, allegedly would not accept his application. Instead, Anderson said he would talk to somebody within the Machinists about it, and get back to Ochoa. Plaintiff also alleges that "Union members" subjected him to repeated harassment.

The primary issue before the Court is whether Plaintiff has sued the proper party. Plaintiff brought an EEOC charge against TCMT, received a Right to Sue letter against TCMT, and initially named TCMT as the party to this lawsuit. Plaintiff claims that TCMT did not notify Plaintiff "of the possible defect in the Plaintiff's EEOC charge" until after the expiration of the limitations period. Upon learning of the defect, Plaintiff apparently dealt with the dilemma surreptitiously, by filing an Amended Complaint naming "Texas Metal Trades Council, AKA International Association of Machinists and Aero-

space Workers, Local Union # 1446, AFL—CIO" as a Defendant.

If indeed TCMT were one and the same with the Machinists, then no issue would arise as to the proper party in this lawsuit. However, Defendant TCMT submits the affidavit of Ben T. Harrison, Business Manager for TCMT, stating that TCMT is an umbrella organization whose members are local unions. Individuals cannot be members of TCMT. Harrison also avers that TCMT "is not known as, or the same as, the International Association of Machinists and Aerospace Workers.... [TCMT] is a separate and distinct organization."

Plaintiff has no cause of action against TCMT separately from his claims against the Machinists. First, individuals cannot be members of TCMT, so Plaintiff can bring no claim for refusal of his application. Second, Plaintiff stated in his deposition that he never asked Harrison to do anything that he failed to do, and that he "felt [Harrison] tried his best." These are the only dealings Plaintiff had with TCMT. Thus, Plaintiff has asserted no legally cognizable Title VII claims against TCMT.

The Court is genuinely irritated at Plaintiff's attempt to bootstrap the Machinists into this action by using "AKA" in his First Amended Complaint and in the styles of his briefs. Manifest procedural defects such as suing an improper party cannot be cured by unilaterally mixing and matching monikers without regard to factual reality. The entity sued here, and the only one served in this lawsuit, is an amalgamation of unions separate and distinct from its members. Plaintiff clearly cannot sue TCMT for actions attributable to the Recording Secretary of the Machinists. Apart from being purely fictional, Plaintiff's attempt to conveniently cure his procedural defects by mixing and matching names leads to further obstacles. If the Court were to allow the claims to proceed against TCMT, Plaintiff might receive a judgment, but it would be void *ab initio* because it would be against the wrong legal entity.

Neither can Plaintiff blame Defendant TCMT for his procedural woes. Rule 11 of

the Federal Rules of Civil Procedure imposes a duty of reasonable investigation into the facts and the law prior to filing a document with a court. It is not the Defendant's duty to inform Plaintiff as to whom he should have sued. It is solely Plaintiff's responsibility to determine at the outset the structure of the legal entity who is responsible for his perceived wrongs.

While Plaintiff's claims that he was denied fair representation and discriminated against in violation of Title VII by a union may have legal vitality, they clearly fail to state a claim against the union named in this action. Accordingly, Defendant Texas City Metal Trades Council's Motion to Dismiss is **GRANTED**, and all claims against such Defendant are **DISMISSED WITH PREJUDICE.**

E. *State Law Claims Against Weaver and Hall*

Finally, the Court turns to Plaintiff's state law claims against the individual Defendants Weaver and Hall. Plaintiff brings claims of defamation, interference with business contract, and intentional infliction of emotional distress against both Defendants. Plaintiff further brings assault charges against Hall, and invasion of privacy charges against Weaver. Pursuant to 28 U.S.C. § 1367, the Court declines to exercise supplemental jurisdiction over the state law claims in this case. Accordingly, Defendant Hall and Weaver's Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's state law claims, and those claims are **DISMISSED WITHOUT PREJUDICE** .

### III.  CONCLUSION

For the reasons set forth above, Defendant Union Carbide's Motion for Summary Judgment is **DENIED** with respect to Plaintiff's Title VII claims, and **GRANTED** with respect to Plaintiff's state law claims of defamation and intentional infliction of emotional distress. The dismissed claims are **DISMISSED WITHOUT PREJUDICE.** The Motion for Summary Judgment of Defendants Texas City Metal Trades Council, Ronald P. Weaver, and Weldon Hall is **GRANTED.** The claims against the Texas City

Metal Trades Council are **DISMISSED WITH PREJUDICE,** while the claims against the individual Defendants Weaver and Hall are **DISMISSED WITHOUT PREJUDICE.** All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**IT IS SO ORDERED.**

### *PARTIAL FINAL JUDGMENT*

For the reasons set forth in the Court's Order entered this date, the motion for Summary Judgment of Defendant Union Carbide is **DENIED** as to Plaintiff's Title VII claims, and **GRANTED** as to Plaintiff's state law claims of defamation and intentional infliction of emotional distress. Those claims are **DISMISSED WITHOUT PREJUDICE.** The Motion for Summary Judgment of Defendants Texas City Metal Trades Council, Ronald P. Weaver, and Weldon Hall is **GRANTED.** The claims against Defendant Texas City Metal Trades Council are **DISMISSED WITH PREJUDICE,** while the claims against the individual Defendants Weaver and Hall are **DISMISSED WITHOUT PREJUDICE.** All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**