Timothy MILLER, Plaintiff,

v.

ROWAN COMPANIES, INC., Defendant.

Civil Action No. 4:96–CV–60WS.

United States District Court, S.D. Mississippi, Eastern Division.

May 29, 1998.

---

Wesley W. Peters, Kirkland & Barfield, Jackson, MS, James D. Holland, Page, Kruger & Holland, P.A., Jackson, MS, Douglas E. Hamel, Vinson & Elkins, Houston, TX, Edley H. Jones, III, Law Offices of Edley H. Jones, III, Ridgeland, MS, for Rowan Companies, Inc.

Leslie R. Brown, Gilmer Law Firm, Jackson, MS, Jane E. Tucker, Jane E. Tucker, Attorney, Jackson, MS, Gary K. Silberman, Gary Silberman, Attorney, Jackson, MS, for Timothy Miller.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

This case was called for trial on June 30, 1997. Plaintiff here is Timothy Miller, a former employee of defendant Rowan Companies, Inc. Plaintiff claimed in his complaint that defendant was liable to him for conduct actionable under Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e–2(a); and pursuant to plaintiff's state law claim of intentional infliction of emotional distress. Since defendant challenged plaintiff's factual and legal allegations, this court determined the controversy to be in equipoise and ripe for resolution at trial. The parties announced ready for trial and this court then selected and empaneled a jury according to law. Each party presented an opening statement on July 1. Plaintiff presented his evidence to the court and jury on July 1 and 2 and rested. At the conclusion of plaintiff's evidence, defendant moved un-

der Rule 50,[1] Federal Rules of Civil Procedure, for judgment as a matter of law. This court granted the motion in a truncated bench opinion which now is being supplemented by the following Memorandum Opinion and Order.

The plaintiff here, Timothy Miller (hereinafter the "plaintiff"), is an African–American and a resident of the State of Mississippi. The sole[2] defendant, Rowan Companies, Inc., (hereinafter "Rowan") is a corporation engaged primarily in providing contract drilling services offshore, having its principal place of business in Houston, Texas. At all times pertinent to this action, Rowan employed more than fifteen employees and was an employer as that term is defined in Title VII of the Civil Rights Act of 1964, as amended.

This court has jurisdiction over this lawsuit pursuant to Title 42 U.S.C. § 2000e–5(f), Title 28 U.S.C. § 1331 (federal question jurisdiction), and Title 28 U.S.C. § 1367 (supplemental jurisdiction).

### The Plaintiff's Claims

As set forth in the Joint Pretrial Order signed by counsel for each of the parties and entered by the court, the plaintiff claimed the following: (1), that the defendant racially discriminated against him by refusing to pay him as a temporarily-assigned floorman; (2), that the defendant subjected the plaintiff to a racially hostile work environment; and (3), that defendant intentionally inflicted emotional distress upon him, a supplemental state law claim. Plaintiff's latter two claims were both generated by the same incident: a rope tied into a noose left in his locker by two of his fellow white crew members. The plaintiff

---

1. Rule 50(a)(1) provides that, "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the con-

trolling law be maintained or defeated without a favorable finding on that issue."

2. Although, as will be seen, plaintiff's complaint for liability and damages against Rowan is founded upon the conduct of two of Rowan's employees, George Szemborski and Don Rutan, plaintiff makes no claim against them in their individual capacities.

subsequently withdrew his claim of wage discrimination. This court then dismissed this claim. Trial proceeded thereafter on the plaintiff's hostile work environment claim under Title VII and on the plaintiff's state law claim of intentional infliction of emotional distress.

### Findings of Fact

The plaintiff, a former football player with the University of Southern Mississippi, Hattiesburg, Mississippi, previously had worked as a policeman with the City of Stonewall, Mississippi. The plaintiff applied for work with the defendant and was hired on July 7, 1994, as a roustabout. Plaintiff was assigned to Rig 38, the "Gilbert Rowe," a drilling facility or "rig" situated offshore in the Gulf of Mexico. As a roustabout, the plaintiff worked directly for crane operator T.J. Papa, as well as the other roustabouts, and had no problems. Plaintiff eventually was promoted from roustabout to floorman on February 15, 1995. As a result of his promotion, the plaintiff's wages increased from $8.80 per hour to $11.05 per hour. His supervisor, a Caucasian, was a driller, Jeff Kirkpatrick. The plaintiff had no problems in this position and, by all accounts, got along well with the other floormen, including the motorman and derrickman on the crew.

Then, on March 21, 1995, while preparing to start work at noon, the plaintiff found an envelope in his locker, which he opened to find a piece of rope tied like a noose and a handwritten note stating, "[w]ear this to the party tonight, heliport." The rope and the note anonymously had been placed in the plaintiff's locker by two of the defendant's Caucasian employees, George Szemborski, an electrician, and Don Rutan, a mechanic, who were assigned to the "Gilbert Rowe" and who worked with the plaintiff's crew on an occasional basis.

The plaintiff showed the rope and note to his supervisor, Kirkpatrick, who voiced his disdain over the circumstance and his support of the plaintiff. Several other Caucasian employees also came forward and spoke words of support and encouragement to the plaintiff, including Dick Cain, the night tool pusher. Cain assured the plaintiff that Cain could and would put a stop to any such incidents.

Later, after learning that the plaintiff had been made upset by the incident, Szemborski and Rutan came forward and admitted to the plaintiff that they had been the perpetrators. Szemborski and Rutan explained that the whole matter was intended as a "joke" which, unappreciated by them, had caused grief instead of laughter.

The plaintiff accepted their apologies and worked for several more days on the rig without experiencing any more incidents. He left the rig on his regular crew change and, while at home, told what had happened to his parents. The plaintiff's father then contacted the Clark County, Mississippi, Chapter of the National Association for the Advancement of Colored People (hereinafter the "NAACP") and arranged for the plaintiff to meet with an NAACP representative. After the meeting, the NAACP sent a letter to the defendant's Houston, Texas, office complaining about the incident.

After the plaintiff returned to work, Dereck Necaise, the rig manager for the "Gilbert Rowe," met in private with the plaintiff. Necaise told the plaintiff that if he had any problems with Szemborski and Rutan, they would be transferred to another rig. Necaise also asked the plaintiff if he would feel better taking a transfer to another rig himself. The plaintiff chose to be transferred himself and was assigned to another rig, the "Odessa."

The plaintiff had no problems on the Odessa; however, after working two or three days, the plaintiff called the defendant's Houston, Texas, office and explained that he was still upset by the March 21st incident. Plaintiff subsequently asked for and was granted a leave of absence. The defendant paid the plaintiff

maintenance and cure while he was on leave of absence and paid for the plaintiff's medical treatment.

Meanwhile, the defendant, Rowan Companies, Inc., investigated the incident, eventually finding that the incident was an isolated and thoughtless act by two of its employees. Defendant also determined that the incident violated company policy. Rutan and Szemborski were counseled and fined two weeks pay as discipline for their conduct. Each was told and understood that any repetition of such conduct would result in his termination. Additionally, the rig supervisor, Dereck Necaise, was counseled regarding the defendant's policy forbidding discrimination. Finally, a written notice to all employees was issued which reminded them that horseplay would not be tolerated; that willful discrimination because of race was prohibited; and that any violation of the defendant's policy could result in immediate suspension or termination.

Shortly after the plaintiff went on leave of absence, the rig supervisor, Dereck Necaise, met with the plaintiff and his parents at their home. Necaise apologized for the incident, asked the plaintiff to return to work, and assured the plaintiff and his family that the incident of March 21st was against company policy and would not happen again. Notwithstanding Necaise's assurances, the plaintiff decided not to return to offshore work. The plaintiff presently is employed at the East Mississippi State Hospital, Meridian, Mississippi, pursing a health care career.

### Applicable Standard

■ Rule 50 of the Federal Rules of Civil Procedure provides in part that if during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on

that issue, the court may determine the issue against that party and may grant a motion for "judgment as a matter of law"[3] against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue. The decision to grant a "judgment as a matter of law" is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury. *Conkling v. Turner*, 18 F.3d 1285, 1300–01 (5th Cir. 1994), citing *In re Letterman Brothers Energy Securities Litigation*, 799 F.2d 967, 972 (5th Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). "If the facts and inferences point so strongly and overwhelmingly in favor of the moving party ... that reasonable jurors could not have arrived at a contrary verdict, then (the United States Court of Appeals for the Fifth Circuit) will conclude that the motion should have been granted." *Burch v. Coca–Cola Company*, 119 F.3d 305, 313 (5th Cir.1997), citing *RTC v. Cramer*, 6 F.3d 1102, 1109 (5th Cir.1993); *see also Crist v. Dickson Welding, Inc.*, 957 F.2d 1281, 1285 (5th Cir.), *cert. denied*, 506 U.S. 864, 113 S.Ct. 187, 121 L.Ed.2d 132 (1992), citing *Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969). This court reviews the plaintiff's evidence pursuant to this standard.

### *Racially Hostile Work Environment Claim*

■ As to plaintiff's claim of racially hostile work environment, plaintiff must prove by a preponderance of the evidence all of the following elements: (1) that he belongs to a protected class; (2) that he was subject to unwelcome harassment; (3) that the harassment was based on race; (4) that the harassment affected a term, condition or privilege of employment; and

---

**3.** Effective December 1, 1991, Rule 50 of the Federal Rules of Civil Procedure was amended. Under the amended Rule 50, the "motion for directed verdict" and the "motion for Judgment Notwithstanding the Verdict" (or motion for JNOV) are called "motions for judgment as a matter of law."

(5) that the employer knew or should have known about the harassment and failed to take prompt remedial action. *See, e.g., Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir.1996); *Nash v. Electrospace System, Inc.,* 9 F.3d 401, 403 (5th Cir.1993). Whether the conduct is hostile or abusive depends on the totality of circumstances. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993).

■ Plaintiff has failed to mount a prima facie case on factor (5), that plaintiff's employer knew or should have known about the harassment and failed to take prompt remedial action. Plaintiff has presented no proof that the defendant, his employer, knew or should have known that two of its white employees would tie a rope to resemble a noose, then place the rope so plaintiff could see it. The incident was isolated, unannounced and not preceded by any conduct brought to the attention of the defendant which would have placed defendant on notice that such was about to occur. *See Nash v. Electrospace System, Inc.,* 9 F.3d at 404, citing *Jones v. Flagship International,* 793 F.2d 714, 720 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987) (an employer is liable only if it knew or should have known of the employee's offensive conduct and did not take steps to repudiate that conduct and eliminate the hostile environment).

■ Nor has plaintiff shown that the defendant failed to take prompt remedial action. Here, the company disciplined the individuals involved, counseled supervisory personnel, declared the episode reprehensible and offered either to accommodate plaintiff satisfactorily on the rig or, at his choice, transfer him elsewhere. Meanwhile, *immediately following this incident,* supervisory personnel aboard the rig had expressed support for plaintiff. The culprits who had perpetrated the act themselves promptly apologized, explaining that in bad taste they thought they were continuing with plaintiff a Ku Klux Klan joke plaintiff and they earlier had discussed.

Plaintiff would have this court restrict its gaze solely to the conduct of plaintiff's immediate supervisor who, upon being informed by plaintiff of the incident, threw the rope overboard and stated the "horseplay" should be concluded. Plaintiff would have this court conclude that this no-nonsense approach constituted ratification of the episode, claiming destruction of the evidence and the supervisor's failure to punish the wrong-doers at once. Plaintiff forgets that he himself initially stated to persons on the rig that he had considered the incident a joke. Only later did plaintiff characterize the incident differently. When he did and when the defendant was so notified, the defendant chastised the persons involved, docked their pay some $1,500.00 or $1,600.00 and informed plaintiff of its regrets. This court holds that this is prompt, remedial action. Accordingly, plaintiff's racially hostile work environment claim fails for want of prima facie proof on this factor.

### *Intentional Infliction of Emotional Distress Claim*

The plaintiff's supplemental claim under state law is for damages resulting from the defendant's alleged intentional infliction of emotional distress. *See* Title 28 U.S.C. § 1367(a).[4] This claim is resolved by referring to Mississippi's law governing such claims. In *Morrison v. Means,* 680 So.2d 803, 805–06 (Miss.1996), the Mississippi Supreme Court stated that "[t]he standard

4. Title 28 U.S.C. § 1367(a) provides: "(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

of recovery for mental anguish (and intentional infliction of emotional distress) requires conduct so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community," quoting Restatement (Second) of Torts § 46, Cmt. d (1977). *See Wong v. Stripling,* 700 So.2d 296, 306 (Miss.1997) (adding "intentional infliction of emotional distress" to the quote from *Morrison v. Means,* and citing The Restatement (Second) of Torts § 46 Cmt. d); *see also Peoples Bank and Trust Co. v. Cermack,* 658 So.2d 1352, 1365 (Miss.1995) (citing § 46, the definition of "outrageous conduct causing severe emotional distress"); *Lyons v. Zale Jewelry Company,* 246 Miss. 139, 149, 150 So.2d 154, 157 (1963) (citing § 46 of the first Restatement of Torts, on definition of "conduct intended to cause emotional distress only").

The Restatement (Second) of Torts § 46 Cmt. d cited so often by the Mississippi Supreme Court provides as follows:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

*Wong v. Stripling,* 700 So.2d at 306.

Based on the foregoing Mississippi Supreme Court decisions, to succeed on his claim of intentional infliction of emotional distress, plaintiff must prove by a preponderance of the evidence the following elements: (1) that he was subjected to conduct by defendant's employees that was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (2) that the conduct proximately caused him severe emotional distress; (3) that defendant intended to inflict severe emotional distress or knew or was substantially certain that severe emotional distress would result; and (4) that defendant's employees were acting in the course and scope of their employment and the conduct was ratified by the defendant.

This court finds that plaintiff has presented no legally sufficient evidentiary basis for a reasonable jury to find for the plaintiff on this issue. This court is particularly mindful of the Mississippi Supreme Court's holding in *Leaf River Forest Products, Inc. v. Ferguson,* 662 So.2d 648 (Miss.1995), where the Court found no basis for the plaintiffs' claim of intentional infliction of emotional distress when the proof showed that the company had tried to address the toxin problem complained of by the plaintiffs and was not behaving willfully, wantonly, or in a grossly negligent manner. The circumstances in the instant case compare most favorably to those of *Leaf River Forest Products, Inc. v. Ferguson.* The defendant in the instant case responded to the plaintiff and to the

incident in question in a reasonable manner; disciplined the individuals involved; counseled supervisory personnel; declared the episode reprehensible; and offered either to accommodate plaintiff satisfactorily on the rig or, at his choice, transfer him elsewhere. The defendant simply has not acted toward the plaintiff in an outrageous manner designed to inflict emotional suffering; instead, the evidence shows a response by the defendant well within the bounds of decency.

### Conclusion

Pursuant to Federal Rule of Civil Procedure 50, on defendant's motion at the close of plaintiff's evidence, the court finds that plaintiff has been fully heard and there is no legally sufficient evidentiary basis for a reasonable jury to find for plaintiff. Having considered all the evidence in the light and with all reasonable inferences most favorable to plaintiff, plaintiff's evidence is insufficient as a matter of law to entitle plaintiff to recover against defendant. Therefore, it is ordered that defendant's motion for judgment as a matter of law is granted.